**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Richard P. Matsch**

Civil Action No. 13-cv-01744-RPM

HARLEY QUINT YOUNG; and
SHARON YOUNG,

Plaintiffs,

v.

RICK RAEMISCH, Executive Director of the Colorado Department of Corrections, in his official capacity[1];
KEVIN MILYARD, former Warden of Sterling Correctional Facility and former Deputy Director, in his individual capacity;
TIMOTHY USRY, SCF Administrative Services Manager, in his individual capacity;
BERNADETTE SCOTT, SCF Mail Room Supervisor, in her individual capacity;
IRIS CHRISTIANS, SCF Mail Room Sergeant, in her individual capacity;
MICHELE WINGERT, Captain, SCF, in her individual capacity,

Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Plaintiff Harley Quint Young ("Mr. Young") is a prisoner at the Sterling Correctional Facility ("SCF"), a state prison operated by the Colorado Department of Corrections ("CDOC"). Plaintiff Sharon Young is Mr. Young's mother. She lives in Boulder, Colorado. In this civil action, Plaintiffs claim that Defendants' policy and practice at SCF of censoring materials printed from the Internet violates their First Amendment rights. [See Doc. 9 at 26-

[1] At the hearing on Defendants' Motion to Dismiss, the Court dismissed all official-capacity Defendants from the case with Plaintiffs' agreement, based on the premise that the Colorado Department of Corrections was already a named Defendant. That was not actually the case, nor could it be under the Eleventh Amendment absent the State of Colorado's consent to suit. See Alabama v. Pugh, 428 U.S. 781, 782-83 (1978). Colorado has not consented to suit in federal court for claims brought under 42 U.S.C. § 1983. The Court will therefore retain Rick Raemisch as a Defendant in his official capacity.

27.] Mr. Young also claims that the procedures followed by Defendants in censoring such materials deny him the process he is due under the Fourteenth Amendment. [See id. at 27.] Plaintiffs seek declaratory and injunctive relief against CDOC Director Rick Raemisch in his official capacity, as well as nominal, compensatory, and punitive damages against the individual-capacity Defendants. [See id. at 27-28.]

The following facts are alleged in Plaintiffs' Amended Complaint and are accepted as true for the purposes of deciding Defendants' Motion to Dismiss:

CDOC Administrative Regulation 300-38, "Offender Mail," governs prisoner access to mail. AR 300-38 provides that "[a]ll items of value ordered or received through the mail must be paid in full, purchased, and shipped by an approved source of supply." The regulation defines an "approved source of supply" as a:

> Publisher, retail/wholesale dealer of mail order products for books, magazines, hobby craft, faith items and health care items, or other items determined by the administrative head, with an address or post office box and phone number, verifiable with a commercial directory service.

Beginning in late 2009, Defendants Milyard, Usry, Scott, Christians and Wingert began to require that all materials printed from the Internet and sent to SCF prisoners be sent from an "approved source of supply," as defined above, purportedly because materials printed from the Internet are "items of value."

Mr. Young's mail has been rejected on five separate occasions. They can be summarized as follows:

- June 18, 2010: Ann Phelps, a correctional officer in the SCF Mail Room, rejected a piece of mail from Mr. Young's mother-in-law containing an article of less than 20 pages that was printed from the Internet; Phelps rejected it because the article was a "publication not from an approved source." Mr. Young then met with his case manager, Jean Petterson, who told him that whenever a prisoner received a large amount of material printed from the Internet the material would be deemed a book and denied. Young then initiated

CDOC's grievance process by filing a Step 1 Grievance. Defendant Bernadette Scott denied the grievance because: (1) the material had a published date and publisher (and therefore was a book); and (2) the material was not from an approved source of supply, as required by AR 300-38. Young then filed a Step 2 Grievance. Mary Cox-Bergman, the Administrative Services Manager at SCF at the time, denied the grievance and stated that it was SCF's practice to "reject books printed off the internet" because they are "sent in from an unapproved source" and are also used by prisoners to defeat SCF's limits on the number of books inmates can have in their cells. Ms. Cox-Bergman has explained that, although the term "book" is not defined by CDOC regulations, the mailroom staff used a "common-sense determination" as to what was and was not a book. Young filed a Step 3 Grievance, which was denied. [Doc. 9 ¶¶ 58-67.]

- August 24, 2010: Plaintiff Sharon Young sent Mr. Young ten pages of material from paizo.com, a fantasy content provider. The material was available for printing from the Internet free of charge and not available from any other source. Patricia Manning, an SCF Mail Room employee, rejected the material because it contained "pages from a book – unauthorized source." Young filed a Step 1 Grievance, which was denied by Defendant Scott. Young filed a Step 2 Grievance. Ms. Cox-Bergman responded that the "[m]ail room should have allowed this in in, if it is exactly what you are claiming – 6 pages of material taken off the internet. This would not have been objected to by the Reading Committee AR 300-26 Offender Reading Material. Mail Room has been reminded of this direction." Young filed a Step 3 Grievance, which was denied. [Id. ¶¶ 70-81.]

- March 27, 2012: Mr. Young's brother sent him a 10-page short story entitled "Sun-Powered Car" that was printed for free from the Internet. The author explicitly allowed readers to print the story and share it with others; the story was not available from any other source. The SCF Mail Room rejected the material because it was an "e-book, 'Sun Powered Car' by Robert Burton Robinson Copyright 2008[,] per Mail Room supervisor it is not authorized – not approved source." Mr. Young filed a Step 1 Grievance. Defendant Scott denied the grievance because, even if the book were allowed to be shared free of charge, "it[] still needs to come from an approved source. Which is from paizo.com[2], not family members. As your mail did not come from an approved source, which violates the AR, I cannot offer any relief in this matter." Mr. Young filed a Step 2 Grievance. Defendant Wingert denied the grievance, stating that "if an article, book, etc. is published in book form and can be purchased through an approved source of supply" it must come from an approved source of supply. Wingert also said that "E-books are not currently allowed in the correctional facility and therefore e-books material would not be allowed." Mr. Young filed a Step 3 Grievance, which was denied. [Id. ¶¶ 82-102.]

- April 16, 2012: Sharon Young sent Mr. Young a six-page document printed from paizo.com; the document was free and not otherwise available. The SCF Mail Room rejected it for unknown reasons. Mr. Young filed a Step 1 Grievance. Defendant Scott

[2] It is not clear why Defendant Scott referenced paizo.com in regard to this grievance. The book was available for free download and printing from www.robertburtonrobinson.com, the author's website.

denied the grievance, stating that "the items did not come from an approved source. Per AR 300-38, books must come from an approved source, and at this point, your mother is not an approved source." Mr. Young filed a Step 2 Grievance. Defendant Wingert denied the grievance because of the approved source rule. Mr. Young filed a Step 3 Grievance, which was denied. [Id. ¶¶ 103-112.]

- May 4, 2012: Sharon Young sent Mr. Young several pages of "The Life Story of Insects," which were printed from the Internet for free. "The Life Story of Insects" is available in hardcover and e-book format. The SCF Mail Room rejected the material (it is unclear who rejected it). Mr. Young filed a Step 1 Grievance. Defendant Christians denied the grievance because: "As clearly stated in the AR any item needs to be shipped by an approved source of supply, in accordance with AR 850-6. The sender of the copied e-book is not an approved vendor." Mr. Young filed a Step 2 Grievance. Defendant Usry denied it, stating "Books must be order[ed] thru (sic) an approved source, and sent in thru (sic) that source. Family members are not considered approved sources for the purchase of books." [Id. ¶¶ 113-121.]

Each time SCF Mail Room staff rejected material sent to Mr. Young, the material was marked "Return to Sender" and sent out of the facility before Mr. Young was given notice of the rejection and before he could file a grievance. [Id. ¶¶ 61, 80, 101, 111, 147.] The SCF officials who responded to Young's grievances did not review the censored material itself to determine if the SCF Mail Room's rejection of the material was appropriate. [Id. ¶ 148.]

In summer 2012, Mr. Young met with Defendants Scott and Usry to discuss his issues with the SCF Mail Room. Following the meeting, Mr. Young filed a grievance requesting that CDOC execute a written agreement that would allow him to receive printed Internet material that complied with CDOC's content restrictions. Defendant Scott responded to that grievance, stating that, "[w]hile family members may send in printed internet pages, any books printed from the internet[]are not allowed in to the offenders." Defendant Usry also responded to the grievance, and in reference to the several pages of the "Life Story of Insects" sent in by Ms. Young, stated that it was denied because it "is an e-book, which is

supposed to be viewed on an e-reader, which is not an approved item at this point. This item was also sent in that is not [from] (sic) an approved source or vendor."

Plaintiffs initiated this action on October 10, 2013. Defendants moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A hearing was held on February 27, 2014. [See Doc. 25.]

**DISCUSSION**

Plaintiffs seek damages against the individual-capacity Defendants for their alleged violations of Plaintiffs' First Amendment rights and Mr. Young's due process rights under the Fourteenth Amendment. Defendants have asserted a qualified immunity defense; therefore, the burden is on Plaintiffs to establish that (1) Defendants violated the Constitution; and (2) the applicable law was clearly established. Pearson v. Callahan, 555 U.S. 223, 231 (2009).

1. Qualified Immunity – Plaintiffs' First Amendment Claims

At the hearing on Defendants' Motion to Dismiss, the Court ruled that Plaintiffs have stated plausible First Amendment claims. [See Doc. 25.] Under Turner v. Safley, 482 U.S. 78 (1987), when a prison regulation infringes on inmates' constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. In making this determination, four factors are relevant: (1) whether there is a valid and rational connection between the prison regulation and the legitimate governmental interest put forth to justify it; (2) whether alternative means of exercising the right remain open; (3) whether accommodation of the asserted right will have an impact on guards, other inmates, and the allocation of prison resources; and (4) whether obvious, easy alternatives exist that fully

accommodate inmates' rights at *de minimis* cost to valid penological interests. Id. at 89-91; see also Jones v. Salt Lake City, 503 F.3d 1147, 1153-54 (10th Cir. 2007).

As to the first Turner factor, Defendants have asserted three legitimate penological interests which they contend are served by prohibiting access to printed Internet materials not from an approved source: (1) preventing prisoners from circumventing property volume limits, (2) ensuring that items of value sent into the prison are lawfully obtained by the sender; and (3) preventing the introduction of contraband into the prison. The Court is mindful of the deference owed to prison officials in administering prisons. But at this stage, a plausible inference could be drawn that there is not a rational relation between those interests and the SCF restriction. There are existing limits on property volume at SCF, and there is no allegation in the Amended Complaint showing that printed Internet materials somehow circumvent those rules and/or suggesting why printed Internet materials could not be included for the purposes of calculating a prisoner's property volume. Defendants' interest in ensuring that "material of value received by an offender has been lawfully obtained" [Doc. 15 at 10] is not implicated here, as the materials in question have been alleged to be free and unavailable from traditional "approved sources" like publishers and online retailers. [See Doc. 9 ¶¶ 69, 72, 85-87, 92, 98-99.] As to concerns regarding the introduction of contraband, SCF regulations currently allow prisoners to receive a variety of loose papers in the mail, *see* CDOC Admin. Reg. 300-38[3], and the Amended Complaint does

[3] CDOC AR 300-38, IV, A, 5 states: "When the offender bears the mailing cost, there is no limit on the volume of letters the offender can receive or on the length, language, content, or source of mail or publications." (emphasis added). The AR defines "Publication" as follows:

> Any information or material in the form of a book, booklet, pamphlet, magazine, periodical, newsletter, photograph or other pictorial depiction of similar document, including stationery and greeting cards,

not suggest that printed Internet materials somehow pose a greater or unique contraband risk. This factor is neutral in the Court's Turner analysis.

Defendants argue that the second Turner factor is satisfied because (1) Sharon Young can send Mr. Young items of value by using an approved source of supply, and (2) Sharon Young can send Young items printed from the Internet that are not of value. [See Doc. 15 at 11.] The first consideration is not a relevant alternative, because Sharon Young wants to send, and Mr. Young wants to receive, items that are not of value. The second consideration is plainly contradicted by the allegations in the Amended Complaint, which deals with repeated SCF rejections of materials printed from the Internet that are not of value. The second factor weighs in Plaintiffs' favor.

As for the third Turner factor, Defendants assert that "allowing Mr. Young to possess materials of value without proof of purchase or from a non-approved source would have a negative impact on guards, other inmates, and the allocation of prison resources" because it will take more time to check those materials for contraband. [Doc. 15 at 11.] That assertion is entitled to deference. Plaintiffs have alleged that allowing printed Internet materials would not add significantly to the Mail Room's existing contraband screening responsibilities. [See Doc. 9 ¶ 27 (stating that stacks of pages are already allowed in unlimited volumes if not "items of value").] It is reasonable to infer that such a change would have some impact on SCF resources. The third factor weighs slightly in Defendants' favor.

Finally, there is an obvious, easy alternative that exists that would fully accommodate inmates' rights at *de minimis* cost to valid penological interests: Defendants could simply

---

writing, drawing or cartoon created by any individual, organization, company or corporation which is distributed or made available through any means or media.

implement a policy as to the allowable amount and processing of materials printed from the Internet; this could be done by amending their Administrative Regulations, or Warden Falk could exercise his authority to execute an "Administrative Regulation Implementation/Adjustment" that would accomplish the broader goals of the applicable Regulations. [See Doc. 9 ¶¶ 33-34, 36-38.] As Plaintiffs have described it, SCF Mail Room staff is currently given virtually uncontrolled discretion to make censorship determinations. This factor is the most compelling in Plaintiffs' favor.

Accordingly, the Court concludes that Plaintiffs have pleaded facts from which a plausible inference can be drawn that Defendants' policies and practices regarding materials printed from the Internet violate Plaintiffs' First Amendment rights.

Defendants contend that they are nonetheless entitled to qualified immunity because Plaintiffs have failed to carry their burden of showing that their First Amendment rights were "clearly established." [See Doc. 15 at 18-19.] A right is clearly established when it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). "Ordinarily, in order for the law to be clearly established, there must be a relevant Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains," Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992), such that existing precedent has "placed the statutory or constitutional question beyond debate," Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).

Plaintiffs assert that it is clearly established that inmates have a First Amendment right to receive information while in prison to the extent that right is not inconsistent with the legitimate penological objectives of the prison. [See Doc. 19 at 20-23.] That statement of

law is accurate, see Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004) (citing Pell v. Procunier, 417 U.S. 817 (1974)), but it is stated at such a "high level of generality" that it is not a great help in deciding this issue. al-Kidd, 131 S. Ct. at 2084. Plaintiffs do not cite a single Supreme Court or Tenth Circuit case involving the same or similar circumstances, nor do they show that the weight of authority from other jurisdictions supports their position. Accordingly, Plaintiffs have failed to carry their burden of showing that, based on existing precedent, it was sufficiently clear that a reasonable official in Defendants' position would have understood that their conduct violated Plaintiffs' First Amendment rights. The individual-capacity Defendants are entitled to qualified immunity on Plaintiffs' First Amendment claims.

2. Qualified Immunity - Mr. Young's Procedural Due Process Claim

Mr. Young alleges that his right to procedural due process under the Fourteenth Amendment was violated because Defendants: (1) did not provide him any means of reviewing the material that was rejected by the SCF Mail Room; (2) limited his recourse to grieving the person or office that rejected the material in the first place; and (3) mailed the material back to the sender before the prison's grievance process was initiated. [See Doc. 19 at 19.]

Mr. Young's first argument fails because the case law he cites in support of his position only establishes that prisoners have a right to receive notice that their mail has been withheld or rejected; neither case established a prisoner's right to review the material itself. [See id. (citing Krug v. Lutz, 329 F.3d 692, 697 (9th Cir. 2003); Murphy v. Mo. Dept. of Corrs., 814 F.2d 1252, 1258 (8th Cir. 1987).]

Mr. Young's second argument is contradicted by his own allegations. It is true that a prison's decision to withhold mail must be accompanied by minimum procedural safeguards, one of which is that "complaints [shall] be referred to a prison official other than the person who originally disapproved the correspondence." Jacklovich, 392 F.3d at 433 (quoting Procunier v. Martinez, 416 U.S. 396, 418-19 (1974), overruled on other grounds by Thornburgh v. Abbot, 490 U.S. 401 (1989)). Plaintiffs' Amended Complaint alleges that SCF officials provide that process here. For example, SCF's June 18, 2010 rejection of Mr. Young's mail involved the following steps: Ann Phelps, a correctional officer in the SCF Mail Room, rejected the mail and provided Young a Rejection Notice [Doc. 9 ¶¶ 58-59]; Defendant Scott denied Mr. Young's Step 1 Grievance [id. ¶ 64]; Mary Cox-Bergman denied Young's Step 2 Grievance [id. ¶ 66]; and the Complaint does not allege who denied Young's Step 3 Grievance [see id. ¶ 67]. Every mail rejection involved multiple SCF officials reviewing Mr. Young's complaints. Accordingly, Mr. Young has failed to allege facts showing that SCF officials did not refer complaints "to a prison official other than the person who originally disapproved the correspondence." Jacklovich, 392 F.3d at 433.

Mr. Young's also alleges that, because rejected materials are sent out of SCF before Mr. Young can initiate the grievance process, the Defendants' subsequent grievance denials were made without actually reviewing the material. [See Doc. 9 ¶¶ 147-48.] Implicit in Jacklovich's holding that due process minimally requires an independent review of a censorship decision is that the independent reviewer be able to review the material being censored. Under Mr. Young's allegations, although Defendants employ a multi-tiered review as a formal matter, the officials reviewing Young's grievances do not have access to the material itself to determine whether the SCF Mail Room's censorship decision was

appropriate; the only basis for review of an SCF Mail Room's censorship decision is the Mail Room official's stated rationale for censoring the material. At this stage, Mr. Young has stated a plausible procedural due process claim concerning SCF's grievance process.

While Mr. Young has stated a plausible constitutional violation, the individual capacity Defendants are nonetheless entitled to qualified immunity because Young does not direct the Court to any case law clearly establishing that a prison must hold on to mail it rejects before the grievance process is exhausted. Based on Jacklovich and other Supreme Court precedent, a reasonable official in Defendants' position would not have known that a multi-layered grievance process that did not include direct review of the censored material at each stage would run afoul of the Fourteenth Amendment.

**CONCLUSION**

Given the Court's conclusion that the individual-capacity Defendants are entitled to qualified immunity on all claims, the Court need not reach Defendants' arguments concerning personal participation and the availability of damages under the Prison Litigation Reform Act.

Upon the foregoing, it is

ORDERED that the Court's February 27, 2014 Order [Doc. 25] is vacated to the extent it dismissed official-capacity Defendant Rick Raemisch from the case, and it is

FURTHER ORDERED that Defendants' Motion to Dismiss [Doc. 15] is granted as to Defendants Kevin Milyard, Timothy Usry, Bernadette Scott, Iris Christians, and Michele Wingert in their individual capacities; they are dismissed from this civil action. Plaintiffs' First and Fourteenth Amendment claims for declaratory and injunctive relief will proceed against CDOC Executive Director Rick Raemisch in his official capacity.

Dated: March 11, 2014.

BY THE COURT:

**s/**Richard P. Matsch

____________________________

Richard P. Matsch
Senior District Judge